121 T.C. No. 6


UNITED STATES TAX COURT


CHARLOTTE'S OFFICE BOUTIQUE, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5077-01.                    Filed August 4, 2003.


        P is a C corporation owned equally by O and her
husband.  P petitioned the Court under sec. 7436(a),
I.R.C., to redetermine R's determination that P was
liable for unreported 1995 through 1998 employment
taxes and additions to tax under secs. 6651(a)(1) and
6656, I.R.C.  That determination resulted from R's
determination that O received "wages" in the form of
payments which P made to O primarily as "royalties"
and, for 1995 and 1996, that P also had "Other Workers"
who received "wages".  R concedes his determination as
to the other workers and moves the Court to dismiss
this case for lack of jurisdiction as to 1996 through
1998.  The parties agree that, during those years, O
was P's employee as to other payments which O received
from P as wages.  <u>Held</u>: The Court has jurisdiction over
all of the petitioned years in that R has determined
contrary to P's audit and litigating position that:
(1) O received the disputed amounts as wages and
(2) P is liable for the payment of employment taxes
under subtitle C as to those disputed amounts.  As to

1996, the Court also has jurisdiction by virtue of P's dispute as to R's determination that the other workers were P's employees during that year. Held, further, the disputed amounts are wages. Held, further, P is not entitled to relief under section 530 of the Revenue Act of 1978 Pub. L. 95-600, 92 Stat. 2763, 2885. Held, further, P is liable for the additions to tax determined by R under secs. 6651(a) and 6656, I.R.C., to the extent stated herein.

Robert E. Kovacevich, for petitioner.

Milton B. Blouke, for respondent.

LARO, Judge: Petitioner petitioned the Court under section 7436(a)[1] to redetermine the following employment tax liabilities and additions thereto determined by respondent:

| Tax Period Ended | Employment Tax | Additions to Tax | |
|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6656 |
| 3/1995 | $2,356.20 | $589.05 | $117.81 |
| 6/1995 | 2,004.30 | 501.08 | 100.22 |
| 9/1995 | 1,774.80 | 443.70 | 88.74 |
| 12/1995 | 2,627.85 | 656.96 | 80.68 |
| 3/1996 | 1,300.50 | 325.13 | 65.03 |
| 6/1996 | 2,080.80 | 520.20 | 104.04 |
| 9/1996 | 841.50 | 210.38 | 42.08 |
| 12/1996 | 2,191.11 | 212.91 | 70.27 |
| 3/1997 | 1,942.48 | 485.62 | 97.12 |
| 6/1997 | 1,942.48 | 485.62 | 97.12 |
| 9/1997 | 1,942.28 | -0- | 97.12 |
| 12/1997 | 1.942.48 | -0- | 97.12 |
| 3/1998 | 1,785.89 | 357.18 | 89.29 |
| 6/1998 | 2,004.30 | -0- | 89.29 |
| 9/1998 | 2,004.30 | -0- | 89.29 |
| 12/1998 | 2,004.30 | -0- | 89.29 |

---

[1] Unless otherwise noted, section references are to the applicable versions of the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

These amounts result from respondent's determination that Charlotte Odell (Ms. Odell) received "wages" in the form of payments (disputed payments) which petitioner made to her primarily as "royalties" and, for 1995 and 1996, that petitioner also had "Other Workers" who received "wages". Respondent determined that petitioner is liable for the additions to tax because it failed to file timely the requisite returns (Forms 941, Employer's Quarterly Federal Tax Returns) reporting the "wages" and/or failed to deposit timely the related taxes.

Approximately 2 weeks before the trial of this case, respondent conceded his determination as to the "Other Workers". Shortly thereafter, respondent moved the Court to dismiss 1996, 1997, and 1998 for lack of jurisdiction. Respondent asserts that the notice of determination is invalid as to those 3 years because, respondent maintains, neither party has disputed that Ms. Odell was petitioner's employee during 1996, 1997, and 1998 by virtue of other amounts during those years which petitioner paid to her as wages. Respondent argued that the Court's jurisdiction under section 7436(a) extends only to those cases where a taxpayer asserts that an individual performing services for the taxpayer is a nonemployee and respondent has determined that the individual is an employee. Respondent's motion does not include 1995 in that petitioner disputes that Ms. Odell was petitioner's employee during that year.

We decide first certain arguments made by petitioner as to claimed improprieties in the conduct of the trial of this case. We reject each argument. We decide second whether we have jurisdiction over 1996 through 1998. We hold we do. We decide third whether the disputed amounts paid to Ms. Odell were wages. We hold they were. We decide fourth whether petitioner is entitled to relief under section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2885. We hold it is not. We decide fifth whether petitioner is liable for the additions to tax determined by respondent under sections 6651(a) and 6656. We hold it is to the extent stated herein.

## FINDINGS OF FACT[2]

Some facts were stipulated. The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference. We find the stipulated facts accordingly. Petitioner is a C corporation, and its mailing address was in Spirit Lake, Idaho, when its petition was filed. Its stock is owned equally by Ms. Odell and her husband, Theodore K. Odell (Mr. Odell) (collectively, the Odells).[3] Ms. Odell is petitioner's president

---

[2] Petitioner in its brief proposes that the Court find as facts certain recitals of trial testimony. We decline to do so. See Rule 151(e)(3).

[3] Mr. Odell's ownership interest arises entirely from community property law.

and one of its two directors.  Mr. Odell is petitioner's other director and its secretary.

Petitioner's business is the former sales business of a sole proprietorship that Ms. Odell started in 1989.  That former business sold to the Federal Government (primarily United States Postal Service) office supplies and equipment (collectively, office supplies).  Petitioner is the corporation that was formed on January 3, 1995, when Ms. Odell incorporated that former business.  In connection with the incorporation, Ms. Odell's sole proprietorship conveyed to petitioner an ownership interest in certain assets (mainly bank accounts and inventory).  Ms. Odell purportedly did not convey to petitioner an ownership interest in a customer list used in the former business.  The customer list contains the names and addresses of more than 6,000 Federal agencies in the United States.  Ms. Odell also purportedly did not convey to petitioner an ownership interest in contracts under which the former business's customers had agreed with Ms. Odell, in her capacity as the former business's sole proprietor, to purchase certain merchandise from the sole proprietorship.  Ms. Odell ostensibly allowed petitioner to use the customer list and to assume the income and liabilities under the contracts in exchange for petitioner's payment to her of royalties ascertained on the basis of petitioner's sales.

Petitioner's business primarily sells to the Federal Government office supplies consisting of staplers, staple removers, and letter openers. As to its sales, petitioner usually causes the subject merchandise to be delivered to the customer directly from its suppliers, mainly Panasonic. Sometimes, usually in the case of small orders, petitioner ships the merchandise directly to the customer from petitioner's inventory. Petitioner does not sell at retail.

Petitioner's business requires minimal labor. Ms. Odell primarily handles the business's day-to-day administration; e.g., dealing with and paying suppliers, talking with customers by telephone, processing customer orders, and bookkeeping. But for a limited amount of outside laborers, who during the relevant years received minimal pay, the only other individual who works for petitioner is Mr. Odell. Mr. Odell works for petitioner's business approximately the same amount of time as Ms. Odell, doing, among other things, all of the shipping and computer work and helping facilitate sales. Unlike Ms. Odell, who is paid for her time, Mr. Odell receives no pay from petitioner. Mr. Odell's primarily source of income is his employment as a locomotive engineer with Union Pacific Railroad. There he works 4 consecutive days and then has the next 4 days off.

During petitioner's typical business day, petitioner (through Mr. or Ms. Odell) checks the fax machine for incoming

orders and processes the orders as they come in.  An order is processed by inputting its data into a computer and, except when the customer pays by direct deposit, running the customer's credit card through a machine in order for petitioner to receive credit for the sale.  Petitioner transmits its inputted orders to its suppliers to be filled.  Typically, petitioner receives 3 to 4 orders a day and takes approximately 10 minutes to process each order.  Petitioner (through Ms. Odell approximately 70 percent of the time and Mr. Odell the rest) also returns phone calls left on the answering machine.  At the most, Ms. Odell usually works an average of 2 hours during each day that the Government is open.

In August 1996, petitioner and Ms. Odell entered into three agreements effective January 1, 1995.  These agreements were an employment agreement, a rental agreement, and a licensing and sale agreement.  Pursuant to the employment agreement, petitioner agreed to pay $400 per month to Ms. Odell in return for her services,[4] and Ms. Odell agreed that she would receive no employment compensation from January 1, 1995, through July 31, 1996.  Pursuant to the rental agreement, petitioner agreed to pay to Ms. Odell $600 per month to rent certain of her property.  Pursuant to the licensing and sale agreement, petitioner agreed to pay to Ms. Odell a monthly royalty fee of the larger of $200

---

[4] Petitioner's accountant advised it that it should initially set the wages at $400 per month.

or 5 percent of the gross receipts for all office supplies sold under the agreement.  Petitioner had resolved on February 15, 1996, to pay Ms. Odell for 1995 a royalty payment equal to 5 percent of gross receipts for the use of her existing Government contracts and her experience in obtaining Government contracts. Petitioner also had resolved to pay Ms. Odell a salary of $400 per month.

The employment agreement provided in relevant part:

EMPLOYMENT AGREEMENT

\*    \*    \*    \*    \*    \*

Charlotte's Office Boutique, Inc. is engaged in the fulfillment of office supply orders; and

Charlotte Odell is experienced in office procedures,

In consideration of the promises and mutual covenants herein set forth, the parties agree as follows:

2.   Job Duties and Responsibilities

A.  Charlotte Odell agrees to perform general office duties for Charlotte's Office Boutique.  Such duties include, but are not limited to, answering the telephone, ordering supplies, receiving orders, fulfilling orders, preparing bid documents, and recordkeeping.

3.   Payments

A.  As this is a start-up company with limited cash flow, Charlotte Odell will not receive compensation for her job performance for the period January 1, 1995 through July 31, 1996.

B.  Commencing on August 1, 1996, Charlotte's Office Boutique, Inc. agrees to pay Charlotte Odell

$400 per month as payment for the performance of the general office duties.  Such payment shall be payable at the end of every month for that month's performance.

The licensing and sale agreement provided in relevant part:

LICENSING AND SALE AGREEMENT

\*      \*      \*      \*      \*      \*      \*

Charlotte's Office Boutique, Inc. is engaged in the fulfillment of office supply orders; and

Charlotte Odell has developed a system to obtain governmental contracts and qualifies as a woman business owner,

In consideration of the promises and mutual covenants herein set forth, the parties agree as follows:

### 1.   Definitions

A.   The term "know-how" as used herein shall mean select process, sources of supply, marketing data, sales techniques relating to office supplies, quality control, inventory control, bid process, and government contract process.

B.   The term "existing contracts" shall mean contracts executed by Charlotte Odell prior to January 1, 1995, to fulfill supplies and equipment orders.  The term shall also include contracts executed after January 1, 1995, but based upon bids submitted prior to January 1, 1995.

C.   The term "gross receipts" shall mean the actual price at which Charlotte's Office Boutique invoices its customers for products and as reported on the corporation's financial statements.  Gross receipts shall not be reduced by bad debts or any other uncollected amounts.

### 2.  Transfer of Know-How, Existing Contracts and "Woman-Owned" Status

A.   Charlotte Odell transfers to Charlotte's Office Boutique, Inc. the right to assume both the

income and liability of contracts entered into by Charlotte Odell prior to January 1, 1995 to fulfill office supply orders. Charlotte Odell agrees to transfer to the Charlotte's Office Boutique her experience in obtaining governmental contracts. Charlotte Odell agrees to allow Charlotte's Office Boutique, Inc. to use her status as a woman and majority stock holder to be classified as a "woman-owned business."

### 3. Payments

A. As payment for the transfer of exclusive rights to receive Charlotte Odell's know-how and existing contracts and the right to Charlotte Odell's status as woman business owner, Charlotte's Office Boutique, Inc. agrees to pay to Charlotte Odell a royalty fee of the larger of five per cent (5%) of the gross receipts for all office supplies sold under this Agreement or Two Hundred Dollars ($200.00) monthly.

B. Estimated Royalties are due and payable monthly to Charlotte Odell, with a final accounting due after final financial statements have been prepared for the calendar year. Any overage or shortage between estimated royalties paid and actual royalties will be netted first against the dividends distributed to Charlotte Odell during the calendar year and second as a payable or receivable of Charlotte's Office Boutique, Inc. owed to or due from Charlotte Odell.

Petitioner made to Ms. Odell the payments referenced in the employment agreement (but not always at the time referenced in the agreement) and issued to her a 1996, 1997, and 1998 Form W-2, Wage and Tax Statement, reporting that it had paid to her during the respective years wages of $2,000, $4,800, and $4,800. Petitioner also during the relevant years paid to Ms. Odell royalties and rent as follows:

| Year | Royalties | Rent | Total |
|------|-----------|------|-------|
| 1995 | $42,048 | $7,200 | $49,248 |
| 1996 | 34,200 | 2,500 | 36,700 |
| 1997 | 51,611 | 7,200 | 58,811 |
| 1998 | 46,690 | 7,200 | 53,890 |

Petitioner paid the amounts to Ms. Odell in 1995 and 1996 primarily by transferring the following amounts from its business bank account to Ms. Odell's personal bank account:

| Date | | Amount | | Date | | Amount |
|------|------|--------|------|------|------|--------|
| **1995** | | | | **1996** | | |
| Jan. | 4 | $1,600 | | Feb. | 20 | $2,000 |
| | 19 | 500 | | | 27 | 5,000 |
| Feb. | 8 | 1,700 | | Mar. | 14 | 500 |
| Mar. | 6 | 500 | | | 22 | 1,000 |
| | 9 | 2,500 | | | | 8,500 |
| | 17 | 8,000 | | | | |
| | 21 | 600 | | Apr. | 1 | 4,000 |
| | | 15,400 | | | 5 | 1,500 |
| | | | | May | 7 | 2,000 |
| Apr. | 3 | 1,500 | | | 13 | 900 |
| | 25 | 200 | | | 22 | 500 |
| May | 1 | 1,500 | | Jun. | 4 | 2,500 |
| | 4 | 200 | | | 12 | 1,500 |
| | 10 | 2,000 | | | 21 | 700 |
| | 25 | 1,500 | | | | 13,600 |
| | 30 | 2,000 | | | | |
| Jun. | 12 | 200 | | Jul. | 12 | 1,500 |
| | 16 | 3,500 | | Sept. | 5 | 1,100 |
| | 26 | 500 | | | 10 | 500 |
| | | 13,100 | | | 18 | 900 |
| | | | | | 25 | 1,500 |
| Jul. | 10 | 1,500 | | | | 5,500 |
| | 18 | 500 | | | | |
| Aug. | 1 | 1,000 | | Oct. | 21 | 1,200 |
| | 8 | 1,500 | | Nov. | 4 | 1,400 |
| | 15 | 1,500 | | Dec. | 3 | 3,500 |
| | 18 | 1,000 | | | 23 | 500 |
| Sept. | 6 | 2,000 | | | | 6,600 |
| | 12 | 1,500 | | | | |
| | 18 | 500 | | | | |
| | 26 | 600 | | | | |
| | | 11,600 | | | | |

| Oct. | 10 | 1,000 |
|------|----|-------|
|      | 16 |   700 |
|      | 20 |   550 |
| Nov. |  6 | 1,400 |
|      | 13 |   625 |
|      | 17 | 1,550 |
| Dec. | 13 | 1,100 |
|      |    | 6,925 |

As to the amounts that petitioner reportedly paid to Ms. Odell as wages, petitioner timely filed with the Commissioner Forms 941 for the calendar quarters ended December 31, 1996, September 30, 1997, December 31, 1997, June 30, 1998, September 30, 1998, and December 31, 1998, and filed untimely on August 2, 1998, a Form 941 for the calendar quarter ended March 31, 1998. Petitioner did not file a Form 941 for any of the other calendar quarters during the subject years. In chronological order, the Forms 941 filed with the Commissioner reported that petitioner paid the following amount of wages to one employee during the corresponding quarter: $2,000, 0, $4,800, $1,200, $1,200, $1,200, and $1,200.

On January 26, 2001, respondent issued to petitioner a Notice of Determination Concerning Worker Classification Under Section 7436 (notice of determination) for 1995, 1996, 1997, and 1998. The notice of determination stated in relevant part:

> As a result of an employment tax audit, we are sending you this NOTICE OF DETERMINATION CONCERNING WORKER CLASSIFICATION UNDER SECTION 7436. We have determined that the individual(s) listed or described on the attached schedule are to be legally classified as employees for purposes of federal employment taxes under subtitle C of the Internal Revenue Code and that

you are not entitled to relief from this classification pursuant to section 530 of the Revenue Act of 1978 with respect to such individual(s). This determination could result in employment taxes being assessed against you.

The schedule attached to the notice of determination listed the referenced individuals as "Odell, Charlotte" and "Other Workers" and listed their determined unreported wages as follows:

| Taxable Period Ended | Ms. Odell | Other Workers |
|---|---|---|
| 3/1995 | $15,400 | --- |
| 6/1995 | 13,100 | --- |
| 9/1995 | 11,600 | --- |
| 12/1995 | 6,925 | $3,622 |
| | 47,025 | 3,622 |
| 3/1996 | 6,500 | --- |
| 6/1996 | 13,600 | --- |
| 9/1996 | 5,500 | --- |
| 12/1996 | 6,600 | 2,585 |
| | 32,200 | 2,585 |
| 3/1997 | 12,696 | --- |
| 6/1997 | 12,696 | --- |
| 9/1997 | 12,696 | --- |
| 12/1997 | 12,696 | --- |
| | 50,784 | -0- |
| 3/1998 | 11,672.50 | --- |
| 6/1998 | 11,672.50 | --- |
| 9/1998 | 11,672.50 | --- |
| 12/1998 | 11,672.50 | --- |
| | 46,690 | -0- |

The Commissioner commenced his audit of most of the taxable years underlying the notice of determination in December 1997 and later expanded his audit to all of the subject years.[5] During

_____

[5] The Commissioner began auditing the Odell's individual
(continued...)

the audit and in the proceeding herein, petitioner did not dispute respondent's determination that Ms. Odell was petitioner's employee in any of the taxable quarters after 1995. Petitioner did dispute respondent's determination that Ms. Odell was petitioner's employee in 1995 and that petitioner employed "Other Workers" in 1995 and 1996. Respondent conceded in this proceeding his determination as to the "Other Workers".

The Odells reported on their joint 1995 through 1998 Federal individual income tax returns the following amounts of total income, rent income, and royalties:

|      | Total income | Rent income | Royalties |
|------|--------------|-------------|-----------|
| 1995 | $107,804     | $7,200      | $42,048   |
| 1996 | 91,912       | 2,500       | 34,200    |
| 1997 | 109,920      | 7,200       | [1]50,784 |
| 1998 | 98,329       | 7,200       | 46,690    |

[1] Whereas the 1997 Form 1099-MISC, Miscellaneous Income, that petitioner issued to Ms. Odell reported that it had paid to her royalties of $51,611, the record does not explain why the Odells reported this lower amount.

They recognized (1) the royalties in full and (2) the full amount of rent less $1,018 of depreciation in 1995, $860 of mortgage interest in 1996, $794 of depreciation in 1997, and $1,086 of depreciation in 1998. For 1995 through 1997, petitioner deducted

[5](...continued)
income tax returns in October 1997 and began auditing petitioner's corporate income tax returns in December 1997.

rent and royalties in the gross amounts reported by the Odells (but for 1997 where petitioner deducted royalties of $51,611).[6]

Petitioner reported on its 1995 through 1997 Federal corporate income tax returns (signed by Ms. Odell, in her capacity as petitioner's president) the following amounts of gross profit, taxable income, and Federal taxes paid:

|      | Gross profit | Taxable income | Federal taxes paid |
|------|--------------|----------------|--------------------|
| 1995 | $123,976     | $9,982         | $1,497             |
| 1996 | 154,071      | 14,535         | 2,180              |
| 1997 | 170,041      | 15,394         | 2,309              |

Petitioner's assets and liabilities as of the end of its 1995 through 1997 taxable years were as follows:

|                        | 1995   | 1996   | 1997   |
|------------------------|--------|--------|--------|
| Assets                 |        |        |        |
| Cash                   | 15,386 | 44,168 | 35,725 |
| Inventory              | 12,204 | 18,698 | 12,528 |
| A/R                    | ---    | ---    | 25,115 |
| Corp clearing a/c      | ---    | ---    | 15,510 |
| Loans to stockholders  | 12,570 | ---    | ---    |
|                        | 40,160 | 62,866 | 88,878 |
| Liabilities            |        |        |        |
|                        | ---    | ---    | ---    |
| Loans from stockholders| ---    | 14,489 | ---    |
| A/P                    | ---    | ---    | 38,014 |
|                        | -0-    | 14,489 | 38,014 |

---

[6] Petitioner's 1998 corporate tax return is not in evidence.

OPINION

1. <u>Conduct of the Trial</u>

Petitioner argues that the trial was conducted improperly. First, petitioner argues, the Court violated its constitutional rights by improperly questioning its witnesses and by directing its witness, Ms. Odell, not to discuss her testimony with anyone during a recess. Petitioner also claims a violation of its constitutional rights by virtue of the fact that the Court declined to consider before proceeding to trial petitioner's motion in limine to place the burden of proof on respondent. The Court informed the parties at trial that we were taking petitioner's motion under advisement and directed petitioner to proceed with its case-in-chief as if it had the burden of proof. Petitioner asserts that respondent bears the burden of proof and should have been required by the Court to present his case-in-chief before petitioner presented its case-in-chief. According to petitioner, respondent was required to go first in that: (1) The notice of determination is arbitrary and invalid in that it neither explains nor references the facts underlying respondent's determination and (2) section 7491 by its terms places the burden of proof upon respondent.

     a. <u>Constitutional Claims</u>

It is deeply ingrained in judicial jurisprudence that the presiding judge is "the governor of the trial for the purpose of

assuring its proper conduct", Loque v. Dore, 103 F.3d 1040, 1045 (1st Cir. 1997); see also Geders v. United States, 425 U.S. 80, 86-87 (1976); United States v. Scholl, 166 F.3d 964, 977 (9th Cir. 1999), and may both question witnesses and comment upon the evidence, Quercia v. United States, 289 U.S. 466, 469 (1933); United States v. Paiva, 892 F.2d 148, 159 (1st Cir. 1989); United States v. Laurins, 857 F.2d 529, 537 (9th Cir. 1988). See generally Fed. R. Evid. 614(b). Of course, a judge's participation must be tailored so as not to advocate or otherwise to advantage or disadvantage a party unfairly. See Quercia v. United States, supra at 470; United States v. Paiva, supra at 159; see also Notes of the Advisory Committee on Fed. R. Evid. 614(b), 28 U.S.C. App. 891 (2000). It is permissible for a judge to instruct a witness not to discuss his or her testimony with third parties until the end of the testimony. Perry v. Leeke, 488 U.S. 272, 281, 282 (1989) ("when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying").

Following our careful review of the record, we reject petitioner's claim that the Court's conduct of the trial violated its constitutional rights. The Court's questioning of witnesses was narrowly tailored to clarify their vague and confusing answers so as to further our decisionmaking process. The Court properly instructed Ms. Odell not to discuss her testimony with

anyone during a short recess. The Constitution does not mandate that a Judge presiding over a proceeding in this Court require that the party with the burden of proof go first at trial.

    b.  Burden of Proof

We need not and do not decide which party bears the burden of proof in this case as to the nonpenalty issues. The record is sufficient for us to decide this case on its merits based on a preponderance of the evidence. We note, however, that we have recently held that a notice of determination concerning worker classification under section 7436 was valid even though it did not name the individuals whom the Commissioner determined to be employees. Henry Randolph Consulting v. Commissioner, 113 T.C. 250 (1999). We also note that section 7491(a), which in certain cases shifts the burden of proof to the Commissioner, does not apply to employment tax determinations. Sec. 7491(a)(1); Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 123 n.2 (2002).

2. Jurisdiction

    The parties agree that we lack jurisdiction over 1996 through 1998 because petitioner did not dispute that Ms. Odell was its employee during those years. According to the parties, Ms. Odell's classification as petitioner's employee was not in dispute for those years because petitioner during those years paid to her wages as evidenced by the Forms W-2. Respondent

asserts that the Court's jurisdiction under section 7436(a) is narrowly drawn to reach only those cases where a taxpayer asserts that an individual performing services for the taxpayer is a nonemployee and respondent has determined that the individual is an employee.

We disagree with the parties that we lack jurisdiction over 1996 through 1998.  It is well settled that a Court may proceed in a case only if it has jurisdiction and that the question of jurisdiction may be raised at any time, even after the case has been tried and briefed.  Neely v. Commissioner, 115 T.C. 287, 290 (2000).  It is also well settled that jurisdiction cannot be conferred upon a Court by the agreement of the parties.  Naftel v. Commissioner, 85 T.C. 527, 530 (1985).  Where, as here, the parties agree that we lack jurisdiction, that agreement is not dispositive as well.

Generally, in the setting of employment taxes, we have jurisdiction under section 7436(a) to determine:  (1) Whether an individual providing services to a person is that person's employee for purposes of Subtitle C; (2) whether the person, if in fact an employer, is entitled to relief under section 530 of the Revenue Act of 1978; and (3) the correct amounts of employment taxes which relate to the Commissioner's determination

concerning worker classification.[7]  See <u>Evans Publg. Inc. v.</u>
<u>Commissioner</u>, 119 T.C. 242, 244 (2002); <u>Henry Randolph Consulting</u>
<u>v. Commissioner</u>, 112 T.C. 1 (1999).  It is the Commissioner's
determination of worker classification that provides the
predicate for our jurisdiction under section 7436(a), and the
ultimate merits of that determination do not affect our
jurisdiction.  <u>Neely v. Commissioner</u>, <u>supra</u> at 290 n.8.  Given
that the Commissioner in this case has determined that Ms. Odell
is petitioner's employee as to the disputed payments, and that
petitioner owes employment taxes and additions to tax with
respect thereto, we conclude that we have jurisdiction over all
the years included in the notice of determination.  As to 1996,

---

[7] Sec. 7436(a) provides:

> SEC. 7436(a).  Creation of Remedy.—If, in
> connection with an audit of any person, there is an
> actual controversy involving a determination by the
> Secretary as part of an examination that—

> > (1) one or more individuals performing
> > services for such person are employees of
> > such person for purposes of subtitle C, or

> > (2) such person is not entitled to the
> > treatment under subsection (a) of section 530
> > of the Revenue Act of 1978 with respect to
> > such an individual,

> upon the filing of an appropriate pleading, the Tax
> Court may determine whether such a determination by the
> Secretary is correct and the proper amount of
> employment tax under such determination.  Any such
> redetermination by the Tax Court shall have the force
> and effect of a decision of the Tax Court and shall be
> reviewable as such.

we also note that we have jurisdiction by virtue of the fact that respondent determined that "Other Workers" had during that year received $2,585 of wages from petitioner.  Although respondent now concedes that determination, respondent's concession has no bearing upon our jurisdiction.  Cf. LTV Corp. v. Commissioner, 64 T.C. 589 (1975) (respondent's concession of no deficiency in a year did not deprive the Court of jurisdiction over the subject matter of that year).

Our conclusion is further supported by an analogy to the applicable law underlying the issuance of a notice of deficiency.[8]  The Court may acquire jurisdiction in such a setting only when the Commissioner has determined that there is a deficiency.  Secs. 6212(a), 6213(a); see also Richards v. Commissioner, T.C. Memo. 1997-149, affd. without published opinion 165 F.3d 917 (9th Cir. 1998).  It is the determination of a deficiency, rather than the existence of a deficiency, that is dispositive as to our jurisdiction.  Hannan v. Commissioner, 52 T.C. 787, 791 (1969).  Thus, even when a taxpayer has made a showing that casts doubt on the validity of a determination in a notice of deficiency, the notice is generally not rendered void,

---

[8] Under sec. 7436(d), the principles of secs. 6213(a), (b), (c), (d), and (f), 6214(a), 6215, 6503(a), 6512, and 7481 apply to cases that arise under sec. 7436, as if the Secretary's notice of determination were a notice of deficiency.

but remains sufficient to vest the Court with jurisdiction. Suarez v. Commissioner, 58 T.C. 792, 814 (1972).

Respondent also argues that there was no actual controversy as to the status of Ms. Odell as an employee of petitioner and that such a controversy is a prerequisite to our jurisdiction. While there is no actual controversy as to whether Ms. Odell was an employee of petitioner with respect to the amounts of $400 per month which she received as wages, there is a dispute as to whether she received the disputed amounts as additional wages in her capacity as petitioner's employee.

We hold that we have jurisdiction as to each of the petitioned years.

### 3. Employment Taxes

Sections 3111 and 3301 impose FICA (Social Security) and FUTA (unemployment) taxes on employers for wages paid to their employees. In this context, the term "wages" generally includes "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash". Secs. 3121(a), 3306(b). The form of payment is immaterial. Notwithstanding the manner in which an employer characterizes payments made to an employee, the critical fact is whether a payment is actually received as compensation for employment. Secs. 31.3121(a)-1(b), 31.3306(b)-1(b), Employment Tax Regs.; see also Spicer Accounting, Inc. v. United States,

918 F.2d 90, 93 (9th Cir. 1990). An officer who performs substantial services for a corporation and who receives remuneration in any form for those services is considered an employee, and his or her wages are subject to the employer's payment of Federal employment taxes. Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. 141, 145 (2001), affd. sub nom. Yeagle Drywall Co. v. Commissioner, 54 Fed. Appx. 100 (3d Cir. 2002).

Respondent determined that the disputed amounts were wages. Respondent contends that Ms. Odell was petitioner's officer and that she performed substantial services for petitioner in that capacity. We agree. We are persuaded by the record that Ms. Odell performed vital and substantial services for petitioner as its president, that she and her labor were petitioner's principal generator of income, and that the disputed payments were indeed remuneration that petitioner paid to her for services which she performed in its business. In fact, with the exception of a small number of outside laborers, who expended minimal labor in petitioner's business, Ms. Odell and her husband were the only individuals who actually worked for petitioner. Whereas Mr. Odell opted not to be compensated directly by petitioner for his vital and substantial services, this choice obviously was made with the knowledge that any benefit from his services would flow directly to only him and his wife. The services of the Odells,

while arguably not long in hours, were indispensable to petitioner's business.

Whereas the employment agreement provides that petitioner was a "start-up company with limited cash flow", we do not agree. First, we scrutinize that agreement strictly given that it was a contract simply entered into by Ms. Odell, on one side in her capacity as an individual and on the other side in her capacity as petitioner's officer, and that it was made effective approximately 20 months beforehand. Second, although the corporation (i.e., petitioner) may have been relatively young, petitioner's business was old in that Ms. Odell had been operating it for some time. Third, as to the claim of "limited cash flow", petitioner reported taxable income in both 1995 and 1996 and had enough available funds during those years to pay to Ms. Odell "rent" and "royalties" totaling $49,248 and $36,700, respectively.

We also give little weight to the fact that Ms. Odell's employment agreement with petitioner provided as to the relevant years that she would be paid only for the last 5 months of 1996 and that, for those months, she would receive only $400 per month. An employer such as petitioner may not evade Federal employment taxes simply by characterizing payments to its principal worker as something other than wages. Spicer Accounting, Inc. v. United States, supra; see also Boles

Trucking, Inc. v. United States, 77 F.3d 236 (8th Cir. 1996);
Joseph Radtke, S.C. v. United States, 895 F.2d 1196 (7th Cir.
1990).

We recognize that the record contains a licensing and sale
agreement between petitioner and Ms. Odell which provides for
petitioner's payment of royalties to Ms. Odell for its use of
certain intangible property rights.  We also understand that a
royalty may be paid for the use of valuable intangible property
rights.  Or. State Univ. Alumni Association v. Commissioner,
193 F.3d 1098 (9th Cir. 1999), affg. T.C. Memo. 1996-34 and
Alumni Association of Univ. of Or. Inc., v. Commissioner, T.C.
Memo. 1996-63.  We do not believe, however, that petitioner's
payments of any of the disputed amounts to Ms. Odell were
royalties under the facts herein.  Whereas Ms. Odell had used the
referenced intangible property in her sole proprietorship to earn
self-employment income subject to self-employment tax, we do not
believe that she can avoid the payment of Federal employment
taxes simply by declaring that she will be paying royalties to
herself through a controlled corporation for its use of that
property.

We sustain respondent's determination that petitioner paid
all of the disputed amounts to Ms. Odell as wages.

4.  Section 530 Relief

Petitioner argues that it is entitled to relief under
section 530 of the Revenue Act of 1978.  When applicable, section

530 affords a taxpayer such as petitioner relief from employment taxes notwithstanding that the relationship between the taxpayer and the individual performing services would otherwise require the payment of those taxes.  Section 530 provides in part:

SEC. 530.  CONTROVERSIES INVOLVING WHETHER INDIVIDUALS ARE EMPLOYEES FOR PURPOSES OF THE EMPLOYMENT TAXES.

(a)  Termination of Certain Employment Tax Liability * * *--

(1) In general.--If--

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period * * *, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) Statutory standards providing one method of satisfying the requirements of paragraph (1).--For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable

to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

    (C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

We disagree with petitioner that it is entitled to relief under section 530 of the Revenue Act of 1978. Under a literal reading of that text, three requirements must be met in order for petitioner to receive the relief described therein. First, as to the disputed payments, petitioner must not have treated Ms. Odell as an employee for any period. Second, petitioner must have consistently treated Ms. Odell as not being an employee as to those payments on all tax returns for periods after December 31, 1978. Third, petitioner must have had a reasonable basis for not treating Ms. Odell as an employee as to those payments. All three requirements must be met in order for petitioner to qualify for relief under section 530 of the Revenue Act of 1978.

We start our analysis with the third requirement; i.e., whether petitioner had a reasonable basis for not treating Ms. Odell as an employee with respect to the disputed payments. Section 530(a)(2) of the Revenue Act of 1978 provides a safe harbor for satisfying this requirement. Under the safe harbor, petitioner will have had a reasonable basis for not treating Ms. Odell as an employee as to the disputed payments if the record establishes that, in so treating her, petitioner reasonably relied on the existence of any of the circumstances listed in

subparagraph (A), (B), or (C) of section 530(a)(2) of the Revenue Act of 1978.

Although not expressed by petitioner clearly, we understand it to argue in its opening brief that Howard E. Clendenen, Inc. v. Commissioner, 207 F.3d 1071 (8th Cir. 2000), affg. T.C. Memo. 1998-318, Springfield v. United States, 88 F.3d 750 (9th Cir. 1996), and Rev. Rul. 87-41, 1987-1 C.B. 296, support a finding that it reasonably believed that Ms. Odell received the disputed payments in other than her capacity as petitioner's employee.  We understand petitioner in its amended opening brief to expand that list of cases and revenue ruling to include Idaho Ambucare Ctr. Inc. v. United States, 57 F.3d 752 (9th Cir. 1995), United States v. Bernstein, 179 F.2d 105 (4th Cir. 1949), United States v. Aberdeen Aerie No. 24, 148 F.2d 655 (9th Cir. 1945), Ridge Country Club v. United States, 135 F.2d 718 (7th Cir. 1943), and Rev. Rul. 58-505, 1958-2 C.B. 728.  The principle that petitioner educes from these six cases and two revenue rulings is that an individual such as Ms. Odell may perform services for a taxpayer both as an employee and as an independent contractor.  Petitioner concludes from this principle that petitioner is entitled to pay to Ms. Odell both wages and other amounts such as rent and royalties.

Although we have no qualm with the principle educed by petitioner or its conclusion as to that principle, we do not believe that the cited cases or revenue rulings support a finding that petitioner reasonably believed that it paid the disputed amounts to Ms. Odell in other than her capacity as an employee. In fact, Spicer Accounting, Inc. v. United States, 918 F.2d 90 (9th Cir. 1990), and Joseph Radtke, S.C. v. United States, 895 F.2d 1196 (7th Cir. 1990), two highly relevant cases that petitioner did not mention as to this issue,[9] lead to the conclusion that petitioner in fact paid the disputed amounts to Ms. Odell as wages. Cf. W. Mgmt. Inc. v. United States, 45 Fed. Cl. 543, 554 n.11 (2000) (court noted that on the basis of Spicer and Van Camp & Bennion, P.S. v. United States, 78 AFTR 2d 5843, 96-2 USTC par. 50,438 (E.D. Wash. 1996), a second case in which Mr. Kovacevich was counsel of record, it was "unlikely" that the plaintiff corporation, a professional service corporation of which he was president, met the reasonable basis requirement of section 530 of the Revenue Act of 1978). We hold that petitioner lacked a reasonable basis not to treat Ms. Odell as an employee

---

[9] Robert E. Kovacevich (Mr. Kovacevich), petitioner's counsel herein, was counsel of record in Spicer Accounting, Inc. v. United States, 918 F.2d 90 (9th Cir. 1990).

with respect to the disputed payments and is not entitled to relief under section 530 of the Revenue Act of 1978.[10]

## 5. Additions to Tax

Respondent determined that petitioner is liable for additions to tax under sections 6651(a) and 6656 by virtue of its failure to file Forms 941 for certain quarters and to deposit the requisite amount of taxes for those and other quarters. Section 6651(a)(1) imposes an addition to tax for failing to file a return on or before the specified filing date unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The addition to tax equals 5 percent of the amount of the tax required to be shown on the return if the failure to file is not for more than 1 month. An additional 5 percent is imposed for each month or fraction thereof in which the failure to file continues, to a maximum of 25 percent of the tax. The addition to tax is imposed on the net amount due. Sec. 6651(a)(1) and (b). If a taxpayer exercised ordinary business care and prudence and was nonetheless unable to file the return within the date prescribed by law, then reasonable cause exists.

---

[10] We note as alternative reasoning leading to this holding that Ms. Odell was petitioner's statutory employee under sec. 3121(d)(1) (i.e., a corporate officer who performed more than minor services for the corporation, see sec. 31.3121(d)-1(b), Employment Tax Regs.) and that we recently indicated in Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121 (2002), that relief under the Revenue Act of 1978, Pub L. 95-600, 92 Stat. 2763, 2885, is limited to worker classification issues arising under common law.

Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect
means a "conscious, intentional failure or reckless
indifference."  United States v. Boyle, 469 U.S. 241, 245 (1985).

Section 6656 imposes an addition to tax equal to 10 percent
of the portion of an underpayment in tax that is required to be
deposited if the failure to deposit is more than 15 days.  As is
true with respect to an addition to tax under section 6651(a), a
taxpayer may avoid an addition to tax under section 6656 if the
taxpayer's failure to deposit a tax was due to reasonable cause
and not willful neglect.  Van Camp & Bennion v. United States,
251 F.3d 862 (9th Cir. 2001); Ellwest Stereo Theatres, Inc. v.
Commissioner, T.C. Memo. 1995-610.

Respondent conceded at trial that section 7491(c) applies to
place on him the burden of production as to the additions to
tax.[11]  In order to meet this burden, respondent must present
sufficient evidence to persuade the Court that it is appropriate
to impose the additions to tax.  Higbee v. Commissioner, 116 T.C.
438, 446 (2001).  If respondent does so, petitioner, in order to
prevail, must present sufficient evidence to persuade the Court

---

[11] In that we have found that the examination of most of the
years commenced before the effective date of sec. 7491(c), we
have difficulty understanding respondent's blanket concession.
All the same, we decide the issue as to penalties giving full
regard to this concession.

that the Commissioner's determination is incorrect.[12]  <u>Id.</u> at
447.  Respondent need not present evidence as to reasonable cause
in order to meet his burden.  <u>Id.</u> at 446-447.  Petitioner bears
the burden of proving that any failure on its part is due to
reasonable cause and not due to willful neglect.  Rule 142(a)(1);
<u>United States v. Boyle</u>, <u>supra</u> at 245.

Except as to the taxable quarter ended December 31, 1996,
for which the record establishes that petitioner filed a timely
Form 941, respondent has met his burden of production as to all
of the determined additions to tax.  The record establishes as to
those additions to tax that:  (1) Petitioner was required to file
Forms 941 and was required to deposit the referenced taxes, and
(2) petitioner failed to file those returns and failed to deposit
those taxes.

As to petitioner's burden, we understand petitioner to argue
primarily that it is not liable for the additions to tax by
virtue of the reasonable cause exception.[13]  More specifically,

------

[12] Sec. 7491(c) does not operate to shift the burden of
proof on the Commissioner.  It only refers to the burden of
production.  The burden of proof is still with petitioner.  Sec.
7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001).

[13] Relying on <u>Kochansky v. Commissioner</u>, 92 F.3d 957, 959
(9th Cir. 1996), affg. in part and revg. in part T.C. Memo.
1994-160, petitioner also argues that it is not liable for the
additions to tax in that the Court of Appeals for the Ninth
Circuit has not decided the substantive issue at hand.  We do not
read the opinion of the Court of Appeals in <u>Kochansky</u> to stand
for the broad proposition stated by petitioner, and we find
(continued...)

we understand petitioner to argue that it relied upon the advice of competent professionals that the disputed amounts were not wages.  We disagree.

In order for petitioner to rely reasonably upon professional advice so as possibly to negate any or all of the additions to tax at issue, petitioner must prove by a preponderance of evidence each prong of the following 3-prong test:  (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) petitioner provided necessary and accurate information to the adviser, and (3) petitioner actually relied in good faith on the adviser's judgment.  Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).  Petitioner has not proven any of these prongs.  We sustain respondent's determination as to the applicability of the additions to tax.  In their computation (or computations) under Rule 155, the parties shall determine these additions to tax taking into account (1) respondent's concession as to the other workers and (2) that the Form 941 for the taxable quarter ended December 31, 1996, was timely filed.

_____

_____

¹³(...continued)
petitioner's reliance on that opinion to be misplaced.  We note that Spicer Accounting, Inc. v. United States, 918 F.2d 90, 93 (9th Cir. 1990), one of the principal cases upon which we rely to decide the substantive issue, was decided by the Court of Appeals for the Ninth Circuit.

We have considered all arguments made by the parties and have found those arguments not discussed herein to be irrelevant and/or without merit.  Accordingly,

<u>An order denying respondent's motion to dismiss for lack of jurisdiction will be issued, and decision will be entered under Rule 155</u>.