T.C. Memo. 2014-40

UNITED STATES TAX COURT

TALBOT MATTHEW ALMQUIST AND RULA ALMQUIST, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15082-11.                    Filed March 10, 2014.

        Ps claimed a deduction for rental real estate losses on their
2008 Schedule E, Supplemental Income and Loss, for two rental real
estate properties.  R determined that Ps were not real estate
professionals and issued a notice of deficiency disallowing a current
deduction for the claimed rental real estate losses.  R also determined
an I.R.C. sec. 6662 accuracy-related penalty.

        <u>Held</u>:  Ps are unable to currently deduct their 2008 losses from
their rental real estate activity pursuant to I.R.C. sec. 469 because
they did not meet the passive activity loss exception for a rental real
estate professional.

        <u>Held</u>, <u>further</u>, Ps are liable for the I.R.C. sec. 6662 accuracy-
related penalty.

**[*2]**   Talbot Matthew Almquist and Rula Almquist, pro se.

Kris H. An, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WHERRY, Judge:  This case is before the Court on a petition for redetermination of a deficiency in income tax respondent determined for petitioners' 2008 tax year.  Petitioners timely filed a joint Federal income tax return for the 2008 tax year that was prepared for them by their certified public accounting firm of Marks & Devine.  Respondent issued a notice of deficiency on April 13, 2011, for the 2008 tax year disallowing a deduction for petitioners' losses from their rental real estate activity as passive and determining an accuracy-related penalty under section 6662(a).[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (Code), as amended and in effect for the taxable year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]** After concessions by the parties,[2] the only issues for decision are (1) whether petitioners' real estate loss of $154,835 reported on Schedule E, Supplemental Income and Loss, for the tax year 2008 is subject to the passive loss limitation under section 469 and (2) whether petitioners are liable for the section 6662(a) accuracy-related penalty.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties with accompanying exhibits are incorporated herein by reference. At the time the petition was filed, petitioners resided in Encino, California.

General Background

Talbot Matthew Almquist worked as an executive at Oakwood Worldwide (Oakwood) a.k.a. R&B Realty Group for over 15 years including the 2008 tax calendar year. While working for Oakwood Mr. Almquist managed 15 rental buildings and oversaw 300 employees. Since 2001 Mr. Almquist and Rula Almquist have owned and managed from one to three rental properties of their own.

---

[2]The parties agree that petitioners did not receive the unreported capital gain of $744 that was determined in the notice of deficiency, petitioners incurred a capital loss of $656 for the taxable year 2008, and petitioners are entitled to a mortgage interest deduction of $76,591 reported on Schedule A, Itemized Deductions, for the taxable year 2008.

**[\*4]** Petitioners' Occupations

In 2008 Mr. Almquist worked as the vice president of operations for Oakwood and received a salary of $180,748.[3] In 2008 Mr. Almquist estimated that he spent no more than 20 hours a week working for Oakwood and that over the course of the year he worked between 885 and 980 hours. Petitioners did not provide any paperwork from Oakwood or other documents supporting Mr. Almquist's claim that he worked no more than 885 to 980 hours in 2008 for Oakwood. Mr. Almquist continued to work for Oakwood until 2010 when his job was terminated and he was provided with a severance check for $180,799.

In 2008 Mrs. Almquist worked as an operations manager for Archstone Communities, LLC (Archstone). Mrs. Almquist oversaw Archstone's properties, buildings, and apartments.

Rental Properties

In 2008 petitioners owned two rental real estate properties. One of their rental properties is in Indio, California (Indio property). Petitioners' home in Oakwood, California, is approximately 130 miles from Indio, California. The Indio property is an approximately 2,700-square-foot residence purchased new in 2006. Petitioners rented the Indio property out to Beverly Humphrey in 2007 and

---

[3]All dollar amounts are rounded to the nearest dollar.

[*5] renewed the lease from January 9 through April 9, 2008, for $3,000 a month. Mr. Almquist maintained the Indio property, which, although purchased new, did not come with the amenities needed to rent it as a furnished apartment. Accordingly, he spent considerable time preparing it for potential renters. Some of the preparation activities included replacing the air conditioner condenser, landscaping the yard, posting ads, and making sure the property had sufficient furnishings.

The other rental property is in Naples, Florida (Naples property). The Naples property was constructed in 1993 and is approximately 1,500 square feet in size. On May 29, 2007, petitioners hired Naples Realty Services, Inc. (Realty), to find possible renters for the Naples property. In 2008 petitioners did not visit the Naples property. Petitioners rented out the Naples property to one renter starting January 28, 2008, for one year. Realty collected the $1,500 per month rent from the renter, withheld its 10% fee, and then forwarded the remaining rent to petitioners.

Both of petitioners' properties were furnished and were intended to be rented out as fully furnished units. Generally, renting furnished residential property requires more upkeep and time than renting unfurnished residential

**[\*6]** property because the furnished property should be equipped with reasonable appliances, furnishings, and necessities for the renters.

Renters and potential renters faxed correspondence to an electronic fax number; then the correspondence was automatically forwarded to Mrs. Almquist's email address. Mr. Almquist had access to Mrs. Almquist's email, and he worked on the rental property business using her email.

Documentation of the Hours Worked

Petitioners provided one calendar and two different logs describing the hours worked on the rental properties. At the start of respondent's examination of petitioners' 2008 tax return petitioners created the calendar from very brief cryptic notes in Mr. Almquist's personal spiral notebook daily records. He did this about a year after the fact, long after the asserted work was completed. The calendar's short notes about the days Mr. Almquist worked on the rental properties occasionally included the hours worked as respondent's revenue agent requested that this information be included when petitioners prepared the calendar. Mr. Almquist contends that the calendar was created on the advice of petitioners' certified public accountant and was, as noted, purportedly based on Mr. Almquist's daily record handwritten notes. Petitioners did not provide the purported supporting handwritten notes to the Court.

[*7]   More than a year after the work was completed petitioners also created the first log purportedly based on the calendar, documents, and emails.  The first log listed the hours Mr. Almquist spent working on the properties and a brief description of the type of work he performed.  That log indicated that Mr. Almquist worked 486 hours on the Indio property and 188 hours on the Naples property.  The first log also indicated that Mr. Almquist spent another 101 hours looking for investment properties and attending open houses.  Other than the calendar prepared after the audit started, petitioners did not provide any of the purported supporting documents or emails to the Court.  Mr. Almquist explained: "[W]e've moved twice since then, so I can't find the original spiral, but, you know, it was transferred to this, which then was transferred to the final document."

After a meeting with a revenue agent, petitioners created a second log listing additional time allocated to the activity.  Mr. Almquist contends that the second log lists more hours because it included additional activities, such as craigslist ads and emails he did not previously include, as well as additional hours for his drive to the Indio property.  Petitioners contend the 280-mile round trip takes on average as much as six to seven hours because of Los Angeles traffic and gas stops.  This second greatly expanded log containing many more entries indicated that Mr. Almquist worked 759 hours on the Indio property and 84 hours

**[\*8]** on the Naples property. Among the changes from the first log to the second log was a modification for November 2008 where the first log reported that Mr. Almquist spent 25 hours on the Indio property, but the second log reported that Mr. Almquist spent a little over 135 hours on the Indio property. Petitioners did not provide the Court with any of the purported new supporting documents or other emails for the later log.

OPINION

As a general rule, the Commissioner's determination in the notice of deficiency is presumed correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Although section 7491(a) may shift the burden of proof to the Commissioner in specified circumstances, petitioners have not established that they meet the requirements under section 7491(a)(1) and (2) for such a shift. Consequently, the burden of proof remains on petitioners.

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any claimed deductions. Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers are required to identify each deduction, maintain adequate records, substantiate each deduction,

[*9] and show that they have met all requirements.[4]  Sec. 6001; <u>Roberts v. Commissioner</u>, 62 T.C. 834, 836-837 (1974); sec. 1.6001-1(a), Income Tax Regs.

I.  <u>Real Estate Activity</u>

A taxpayer is generally allowed deductions for certain business and profit-seeking investment expenses.  <u>See</u> secs. 162, 212.  Section 469 disallows a taxpayer's deductions attributable to a passive activity loss for the taxable year.  Section 469(d)(1) defines "passive activity loss" as "the amount (if any) by which--(A) the aggregate losses from all passive activities for the taxable year, exceed (B) the aggregate income from all passive activities for such year."  Passive activity is defined as any activity "which involves the conduct of any trade or business, and * * * in which the taxpayer does not materially participate."  Sec. 469(c)(1)(A) and (B).  The Code specifically provides that the term "passive activity" also includes any rental activity.  Sec. 469(c)(2).  The Code then provides an exception from that rule for rental real estate activity of a taxpayer who is engaged in a real property trade or business.  <u>See</u> sec. 469(c)(7).[5]

---

[4]Strict substantiation rules for deductions other than those subject to sec. 274(d) scrutiny may, in some situations not present here, be relaxed by the <u>Cohan</u> rule.  <u>See</u> <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930).

[5]There is an additional exception for rental real estate activity losses of a natural person(s); however, that exception does not apply here because the

(continued...)

[*10]  Consequently, the first issue is whether Mr. Almquist was actively engaged in a real property trade or business (real estate professional) as provided in section 469(c)(7).  A taxpayer qualifies as a real estate professional if

>        (i)  more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

>        (ii)  such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B)(i) and (ii).  Unless the taxpayer timely elects otherwise, the taxpayer must satisfy the requirement of material participation as applied separately to each rental real estate interest.  Sec. 469(c)(7)(A).[6]

---

[5](...continued)
exception is completely phased out for taxpayers whose adjusted gross income (AGI) equals or exceeds $150,000.  See sec. 469(i)(3)(A).  Petitioners do not contend their AGI was less than $150,000 for 2008 or that any special phaseout rule applies.  Therefore this exception does not apply.

[6]In order for a taxpayer to make this election, the taxpayer is required to attach a statement to his or her original Federal income tax return stating an intention to make this election.  See sec. 469(c)(7)(A); sec. 1.469-9(g)(3), Income Tax Regs.  Petitioners asserted at trial and in their opening brief that they elected in their 2008 income tax return to combine their rental real estate properties as one activity.  Respondent, however, did not respond or separately raise this issue in the notice of deficiency, at the trial, or in his opening brief.  Rather, respondent waited until his reply brief to bring up this matter.  We discuss infra why the Court need not resolve this issue.

[*11] In determining whether a taxpayer performs more than 750 hours of service in a real property trade or business, any time spent as an employee performing real estate activities is ignored, except if the employee is also a 5% owner as defined in section 416(i)(1)(B). See sec. 469(c)(7)(D)(ii). Mr. Almquist does not contend that he was a 5% owner of Oakwood; therefore, any time spent managing property as Oakwood's employee is not included in determining whether Mr. Almquist is a real estate professional.

Petitioners do not contend that Mrs. Almquist qualifies as a real estate professional. In the case of a joint return, a spouse must separately satisfy the requirements of section 469(c)(7) to qualify as a real estate professional. See sec. 469(c)(7)(B). Petitioners do not allege, nor does the record support, that Mrs. Almquist spent any time on the rental properties that should be included in determining whether there was material participation. Therefore, any time Mrs. Almquist spent working on the rental properties is not included in determining whether Mr. Almquist qualifies as a real estate professional.

All of a taxpayer's real property trade or business activity is taken into account in determining whether the 750-hour requirement is satisfied. See Fowler v. Commissioner, T.C. Memo. 2002-223, slip op. at 13. A real property trade or business is defined in section 469(c)(7)(C) as "any real property development,

**[*12]** redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business." This list does not include any research or other preparatory activities.

The regulations provide that "the extent of an individual's participation in an activity may be established by any reasonable means." Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

> Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means * * * may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

Id. Although "reasonable means" may be interpreted broadly, "a postevent 'ballpark guesstimate'" will not suffice. Moss v. Commissioner, 135 T.C. 365, 369 (2010) (citing Bailey v. Commissioner, T.C. Memo. 2001-296, and Goshorn v. Commissioner, T.C. Memo. 1993-578).

Petitioners introduced a calendar containing cryptic brief notes about the work completed on the two rental properties. The calendar occasionally stated some of the hours Mr. Almquist purportedly worked. Petitioners purportedly created the first log using the calendar, supporting documents, and emails.

**[*13]** However, other than the calendar, petitioners did not supply the Court with any of the purported supporting documents or emails.

Even if this Court were to accept petitioner's calendar and first log as accurate, Mr. Almquist would still not qualify as a real estate professional because the first log shows that Mr. Almquist spent only 486 hours on the Indio property, 188 hours on the Naples property, and 101 hours on investment property. Combined, these would account for 775 hours worked on real estate property, which would only be enough for the 750 hour requirement. Petitioners have not shown that Mr. Almquist spent more than one-half of his trade or business personal service time in a real property trade or business in which he materially participates as required by section 469(c)(7)(B)(i).

Mr. Almquist estimated that he spent somewhere between 885 and 980 hours working at Oakwood. If this Court were to accept Mr. Almquist's assertion and generously place him at the low end of his estimate of 885 hours worked at Oakwood, Mr. Almquist would still not qualify as a real estate professional.

Petitioners contend that this Court should look past the fact that petitioners did not provide any supporting documentation of the hours Mr. Almquist worked, should ignore petitioners' calendar and first log, and should look only to the second log in determining whether Mr. Almquist is a real estate professional. We

[*14] again emphasize that the Court was not provided any of the purported supporting documentation or email and was provided only petitioners' self-serving testimony.

We are not required to accept such self-serving testimony, and we are not willing to rely on that testimony to establish petitioners' position. See Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986); see also Chapman Glen Ltd. v. Commissioner, 140 T.C. __ (slip op. at 45 n.24) (May 28, 2013). Without any supporting documentation, the second log, created by petitioners over a year after the work was completed, is nothing more than "a postevent 'ballpark guesstimate'". See Moss v. Commissioner, 135 T.C. at 369.

Therefore, Mr. Almquist does not meet the minimum requirements for a qualified real estate professional. Accordingly, petitioners' rental real estate activity shall be treated as passive and the claimed deduction relating to the passive activity losses is disallowed for the 2008 tax year.[7]

---

[7]Petitioners' disallowed deduction is "treated as a deduction or credit allocable to such activity in the next taxable year." See sec. 469(b). At trial petitioners made a motion for attorney's fees. Sec. 7430(a) provides relief for a taxpayer seeking attorney's fees if among other requirements the taxpayer is the prevailing party. We need not address the other requirements of sec. 7430 because petitioners are not the prevailing party. Sec. 7430(c)(4) generally provides that a taxpayer may qualify as a prevailing party only if either (1) the taxpayer "has substantially prevailed with respect to the amount in controversy, or * * * has

(continued...)

**[*15]** II. <u>Accuracy-Related Penalty</u>

Respondent bears the burden of production with respect to the section 6662(a) accuracy-related penalty.  <u>See</u> sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001).  In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or the addition to tax is appropriate.

Section 6662(a) imposes an accuracy-related penalty equal to 20% of the underpayment of tax.  Respondent contends that petitioners are liable for the accuracy-related penalty because of their negligence or, alternatively, because the underpayment is due to a substantial understatement of income tax.  <u>See</u> sec. 6662(b)(1) and (2).  We agree.

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to keep adequate books and records or to substantiate items properly.  <u>See</u> sec. 6662(c); sec. 1.6662-3(b)(1),

[7](...continued)
substantially prevailed with respect to the most significant issue or set of issues presented" or (2) the taxpayer has made a qualified offer to settle more favorable to the Commissioner than what the Commissioner actually achieved in certain circumstances (qualified offer rule).  <u>See</u> <u>Knudsen v. Commissioner</u>, T.C. Memo. 2013-87, at *12-*13.  Petitioners do not allege they qualify for the qualified offer rule.  This Court has found that petitioners are not able to currently deduct the disputed deduction.  <u>See</u> Rule 143(c).  Accordingly, petitioners are not entitled to attorney's fees.

**[\*16]** Income Tax Regs. A substantial understatement is an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs.

Respondent has met his burden of production. Respondent showed that the understatement exceeds 10% of the tax required to be shown on the return, which is greater than $5,000, and we therefore need not decide whether petitioners were negligent or disregarded rules or regulations. Petitioners bear the burden of proving a defense to the penalty. See Higbee v. Commissioner, 116 T.C. at 447.

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate that the taxpayer (1) had reasonable cause for the underpayment and (2) acted in good faith with respect to the underpayment. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. A determination of whether a taxpayer acted with reasonable cause "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b), Income Tax Regs. The most important factor "is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Id. Circumstances indicating that a taxpayer acted with reasonable cause and in good faith include "an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id.

**[*17]** Reliance on the advice of a tax professional may, but does not necessarily, establish reasonable cause and good faith for the purpose of avoiding a section 6662(a) penalty.  Sec. 1.6664-4(b)(1), Income Tax Regs.; see also United States v. Boyle, 469 U.S. 241, 251 (1985) (reliance on an accountant or attorney as to a matter of tax law may be reasonable); Canal Corp. v. Commissioner, 135 T.C. 199, 218 (2010) ("The right to rely on professional tax advice, however, is not unlimited.").  To avoid liability for a section 6662(a) penalty on the basis of reliance on a tax professional, a taxpayer must meet the following three requirements:  "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment."  Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see also Charlotte's Office Boutique, Inc. v. Commissioner, 425 F.3d 1203, 1212 n.8 (9th Cir. 2005) (quoting with approval the above three-prong test), aff'g 121 T.C. 89 (2003).  In addition, the advice must not be based on unreasonable factual or legal assumptions (including assumptions as to future events) and must not unreasonably rely on the representations, statements, findings, or agreements of the taxpayer or any other person.  Sec. 1.6664-4(c)(1)(ii), Income Tax Regs.

[*18] The fact that petitioners had an accountant prepare their returns does not, in and of itself, prove that they acted with reasonable cause and in good faith. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99-100. Additionally, petitioners' failure to properly document the time spent performing rental activity was detrimental to their ultimate effort to substantiate all of the time they spent on their rental property activity. See sec. 6001; sec. 1.6001-1, Income Tax Regs. This made it impossible for their accountant to have all the accurate information necessary to make an informed tax decision. Id. The accountant relied on petitioners for an accurate representation of the amount of hours worked on their rental activity; however, petitioners were unable to prove the purported hours worked. Petitioners have not proven reasonable cause for their underpayment. Thus, this Court concludes petitioners are liable for the section 6662 accuracy-related penalty.

The Court has considered all of petitioners' contentions, argument, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant. To reflect the foregoing,

Decision will be entered under

Rule 155.