# United States Tax Court

T.C. Memo. 2023-64

CARDIOVASCULAR CENTER, LLC,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 24412-21.                          Filed May 18, 2023.

————————

Frank Daniel Kresock (an officer), for petitioner.

*David Weiner* and *Matthew K. Henderson*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WEILER, *Judge*: This case is before the Court on a petition for redetermination of employment status pursuant to section 7436.[1] In a Notice of Employment Tax Determination of Worker Classification (notice of determination), the Internal Revenue Service (IRS) determined that petitioner (1) failed to classify some of its workers as employees during tax periods beginning in 2010 through 2015 (tax periods at issue); (2) was not entitled to relief under the Revenue Act of 1978 (RA 1978), Pub. L. No. 95-600, § 530 (section 530), 92 Stat. 2763, 2885 (as amended); and (3) was therefore liable for federal employment

———————————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

**Served 05/18/23**

**[*2]** taxes[2] and additions to tax under section 6651(a)(1) and (2) for the tax periods at issue, in the following amounts:

| Taxable Period Ending | FICA | Income Tax Withholding | Additions to Tax | |
|---|---|---|---|---|
| | | | I.R.C. § 6651(a)(1) | I.R.C. § 6651(a)(2) |
| 03/31/10 | $3,398 | $4,442 | $1,764 | $1,960 |
| 06/30/10 | 3,398 | 4,442 | 1,764 | 1,960 |
| 09/30/10 | 3,398 | 4,442 | 1,764 | 1,960 |
| 12/31/10 | 4,314 | 5,639 | 2,239 | 2,488 |
| 03/31/11 | 4,755 | 7,151 | 2,679 | 2,977 |
| 06/30/11 | 4,917 | 7,394 | 2,770 | 3,078 |
| 09/30/11 | 3,388 | 5,095 | 1,909 | 2,121 |
| 12/31/11 | 3,930 | 5,911 | 2,214 | 2,460 |
| 03/31/12 | 4,427 | 6,658 | 2,494 | 2,771 |
| 06/30/12 | 5,072 | 7,627 | 2,858 | 3,175 |
| 09/30/12 | 4,645 | 6,984 | 2,616 | 2,907 |
| 12/31/12 | 4,980 | 7,489 | 2,805 | 3,117 |
| 03/31/13 | 4,664 | 6,096 | 2,421 | 2,690 |
| 06/30/13 | 3,412 | 4,459 | 1,771 | 1,968 |
| 09/30/13 | 3,720 | 4,863 | 1,931 | 2,146 |
| 12/31/13 | 2,758 | 3,605 | 1,432 | 1,591 |
| 03/31/14 | 3,113 | 4,070 | 1,616 | 1,796 |
| 06/30/14 | 3,829 | 5,006 | 1,988 | 2,209 |
| 09/30/14 | 4,054 | 5,299 | 2,104 | 2,338 |
| 12/31/14 | 4,852 | 6,342 | 2,519 | 2,799 |
| 03/31/15 | 3,407 | 4,453 | 1,768 | 1,965 |
| 06/30/15 | 3,412 | 4,460 | 1,771 | 1,968 |
| 09/30/15 | 3,636 | 4,754 | 1,888 | 2,098 |
| 12/31/15 | 3,839 | 5,018 | 1,993 | 2,214 |

---

[2] Unless otherwise noted, the term "federal employment taxes" refers to the taxes imposed under the Federal Insurance Contribution Act (FICA), I.R.C. §§ 3101–3128, the Federal Unemployment Tax Act (FUTA), I.R.C. §§ 3301–3311, and for federal income tax withholdings, I.R.C. §§ 3401–3406.

[*3]

| Taxable Year Ending | FUTA | Additions to Tax | |
|---|---|---|---|
| | | *I.R.C. § 6651(a)(1)* | *I.R.C. § 6651(a)(2)* |
| 2010 | $805 | $181 | $201 |
| 2011 | 1,736 | 391 | 434 |
| 2012 | 1,260 | 283 | 315 |
| 2013 | 1,508 | 339 | 377 |
| 2014 | 1,496 | 337 | 374 |
| 2015 | 1,532 | 345 | 383 |

Trial of this matter was held on December 13, 2022, during the Court's Las Vegas, Nevada, trial session. Following trial, the issues for decision are (1) whether to grant respondent's Motion for Leave to File First Amendment to Answer (Motion to Amend) and allege the affirmative defense of collateral estoppel; (2) whether petitioner's workers listed in the notice of determination were employees of petitioner during the tax periods at issue; (3) whether petitioner is entitled to relief under section 530; (4) whether petitioner is liable for federal employment taxes; and (5) whether petitioner is liable for additions to tax under section 6651(a)(1) and (2) for the tax periods at issue.

For the reasons discussed below, we will deny respondent's Motion to Amend and resolve the remaining issues in respondent's favor.

FINDINGS OF FACT

The parties filed a First Stipulation of Facts with accompanying Exhibits, which was admitted at trial. The facts stipulated are so found. Petitioner's principal place of business was Arizona when it filed its Petition.

Petitioner is an active Arizona limited liability company whose sole member is Dr. Frank Daniel Kresock. Petitioner was treated as a disregarded entity for federal tax purposes; therefore, income and deductions were reported on Dr. Kresock's personal tax returns. Dr. Kresock operated his medical practice through petitioner. Janine Smith works with Dr. Kresock in his medical practice as the office manager and as a registered health information technologist. Sabrina Banuelos, Jane Blevins, Leonor Moreno, and Nohemi Morales

4

[*4] (collectively, workers) also work with Dr. Kresock as medical assistants in the practice. The employment status of these four workers and Ms. Smith is at issue. Each worker was paid with a cashier's check signed by Dr. Kresock following a submission of a biweekly timesheet, which was approved by Ms. Smith. The workers were paid a set hourly rate. The timesheets identified them as "employees" and Ms. Smith as "manager." According to the biweekly timesheets, the workers often worked in excess of 70 hours, indicating a full-time schedule, and were paid an increased hourly rate for work performed in excess of eight hours per workday.

Ms. Smith was not paid directly by petitioner for the tax periods at issue; however, Dr. Kresock paid her personal bills, such as her mortgage payments on homes titled in her name, since Dr. Kresock and Ms. Smith resided together.[3]

All workers were subject to Dr. Kresock's supervision and reported to him. The workers were expected to follow the office procedures that were set by and communicated to them by Dr. Kresock and Ms. Smith. None of the workers was able to realize a profit or loss because of their services. There were no formal employment contracts between Ms. Smith and petitioner or between petitioner and the workers. The workers determined their own schedules, where they were permitted to arrive and leave, at any time, without adverse consequences from Ms. Smith or Dr. Kresock.

The workers worked with petitioner for several years. Three of the workers were previous participants in practical training petitioner hosted as part of their program of study. These workers began working with petitioner after expressing an interest in working for petitioner during their practical training.

Ms. Smith was responsible for managing the office and the workers and performing coding tasks. Ms. Smith worked "almost every day." At Ms. Smith's direction, the workers performed both "front office" and "back office" duties, including answering phones, taking care of patients, completing prior authorizations, faxing prescriptions, collecting payments, scheduling appointments, checking blood pressure,

---

[3] At trial Ms. Smith testified that she "volunteered" for petitioner (without remuneration) by "helping out in the practice."

**[*5]** pulse, and weight, making entries into patient charts, and taking patients to patient rooms.

Petitioner did not file or furnish Form 1099–MISC, Miscellaneous Income, or W–2, Wage and Tax Statement, reporting the compensation paid to the workers, nor did it file any associated employment tax returns (Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, and Form 941, Employer's Quarterly Federal Tax Return) for the tax periods at issue.

## OPINION

I.   *Burden of Proof*

The determinations set forth in the Commissioner's notice of determination are presumed correct, and the taxpayer bears the burden of proving these determinations are in error. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Ewens & Miller, Inc. v. Commissioner*, 117 T.C. 263, 268 (2001).[4] Petitioner thus bears the burden of proving that the workers were not its employees during the tax periods at issue. Petitioner, a disregarded entity, also bears the burden of proving that it is not liable for penalties. *See* I.R.C. § 7491(c); *Dynamo Holdings Ltd. P'ship v. Commissioner*, 150 T.C. 224, 231–32 (2018).

II.   *Analysis*

A.   *Collateral Estoppel*

At the beginning of trial respondent sought leave to file the Motion to Amend and allege the affirmative defense of collateral estoppel. After trial respondent filed the Motion to Amend with the Clerk's Office. At trial petitioner opposed respondent's Motion to Amend.

---

[4] Section 7491(a), which shifts the burden of proof to the Commissioner in certain circumstances, does not apply to federal employment tax disputes. *Charlotte's Office Boutique, Inc. v. Commissioner*, 121 T.C. 89, 102 (2003), *supplemented by* T.C. Memo. 2004-43, *aff'd*, 425 F.3d 1203 (9th Cir. 2005). While the burden of proof may also shift to the Commissioner with respect to certain issues under section 530, *see* Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1122, 110 Stat. 1755, 1766–67 (amending section 530 to include section 530(e)(4)), this provision does not affect our analysis here.

**[\*6]** A party may amend his pleading once as a matter of course at any time before a responsive pleading is served. Rule 41(a). After pleadings are closed, a party may amend by "leave of Court or by written consent of the adverse party, and leave will be given freely when justice so requires." *Id.*

Whether to permit such an amendment is a matter within the sound discretion of the Court. *Estate of Quick v. Commissioner*, 110 T.C. 172, 178 (1998), *supplemented by* 110 T.C. 440 (1998); *Law v. Commissioner*, 84 T.C. 985, 990 (1985). The touchstone in evaluating whether to allow an amendment is the existence of unfair surprise or prejudice to the nonmoving party. *Estate of Quick*, 110 T.C. at 178–80; *Law*, 84 T.C. at 990.

The question of prejudice is whether the addition of those new issues by a later amendment, rather than by inclusion in the initial pleading, creates an unfair disadvantage to the other party. *Ax v. Commissioner*, 146 T.C. 153, 168–69 (2016). Where an amendment is sought on the eve of trial, so that the nonmoving party is deprived of fair notice and opportunity to prepare, prejudice to the nonmoving party is apparent. *Id.* In such an example, one could not say that "justice . . . requires" that leave be granted to amend the pleading. *See* Rule 41(a); *Ax*, 110 T.C. at 168–69; *Church of Scientology of Cal. v. Commissioner*, 83 T.C. 381, 469 (1984), *aff'd*, 823 F.2d 1310 (9th Cir. 1987)).

Respondent contends there is no prejudice to petitioner with respondent's Motion to Amend; however, the Court disagrees. Respondent moved to amend his Answer at trial, thus giving petitioner essentially no time to prepare and rebut respondent's new argument. Accordingly, we will deny respondent's Motion to Amend on the basis of extreme tardiness of the Motion and find respondent has waived the affirmative defense of collateral estoppel.[5]

B.      *The Workers' Legal Classification*

Employers are subject to "employment taxes," which include taxes imposed by FICA and FUTA, and income tax withholding under section 3402. Employers must make periodic deposits of amounts withheld from employees' wages and amounts corresponding to the employer's share of FICA and FUTA tax. I.R.C. §§ 6302, 6157; Treas.

---

[5] Our analysis of the issues presented does not depend upon the new argument of collateral estoppel for which respondent sought leave to amend his answer.

**[\*7]** Reg. §§ 31.6302-1, 31.6302(c)-3. These employment taxes apply only in the case of employees and do not apply to payments made to independent contractors.

We determine a worker's employment status by applying common law concepts, *see* I.R.C. §§ 3121(d)(2), 3306(i); *see also Weber v. Commissioner*, 103 T.C. 378, 386 (1994), *aff'd per curiam*, 60 F.3d 1104 (4th Cir. 1995), while keeping in mind that doubtful questions should be resolved in favor of employment, *Ewens & Miller, Inc.*, 117 T.C. at 269.

We consider various factors in determining whether a worker is a common law employee or an independent contractor including: (1) the degree of control exercised by the principal over the worker; (2) which party invests in the work facilities used by the worker; (3) the worker's opportunity for profit or loss; (4) whether the principal can discharge the worker; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believed they were creating. *Id.* at 270. No single factor is dispositive, and all facts and circumstances must be considered. *Id.*

The U.S. Court of Appeals for the Ninth Circuit, the court to which an appeal of this case would lie under section 7482(b), has similarly considered a list of nonexhaustive factors as a guide in this inquiry. *See Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1009–10 (9th Cir. 1997) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992)). The IRS has also issued guidance using some 20 factors in determining whether an employment relationship exists. *See* Rev. Rul. 87-41, 1987-1 C.B. 296.

The principal's degree of control over the worker is a crucial factor in determining whether an employment relationship exists. *Weber*, 103 T.C. at 387. To that end, "[a]n employer-employee relationship exists when the principal retains the right to direct the manner in which the work is to be done, controls the methods to be used in doing the work, and controls the details and means by which the desired result is to be accomplished." *Atl. Coast Masonry, Inc. v. Commissioner*, T.C. Memo. 2012-233, at \*15 (citing *Ellison v. Commissioner*, 55 T.C. 142, 152–53 (1970)).

1. *The Degree of Control Exercised by the Principal Over the Worker*

Again, the degree of control over the worker is the critical factor in determining whether an employment relationship exists. *Weber*, 103

[*8] T.C. at 387. Dr. Kresock and Ms. Smith were responsible for creating and implementing the procedures that the workers were expected to follow. Ms. Smith was required to sign the timesheets provided by the workers, and was designated on the sheet as a "manager." Ms. Smith directed the daily work that was done by workers. Dr. Kresock testified that the workers determined their own hours, but this does not necessarily create an independent contractor relationship. *See Ewens & Miller, Inc.,* 117 T.C. at 270. It is clear that petitioner exercised a significant degree of control over the workers as Dr. Kresock controlled the location of the work, the work performed, the products used to complete the work, and the amount the workers and Ms. Smith were paid. *See id.* This factor weighs in favor of an employment relationship.

2.      *Which Party Invests in the Work Facilities Used by the Worker*

Generally, a worker who provides her own tools to complete the work will be considered an independent contractor. *Id.* at 271. There is no indication that the workers or Ms. Smith used their own tools or supplies. Petitioner provided the workers and Ms. Smith the phones, computers, and medical supplies required to complete their jobs. This factor weighs in favor of an employment relationship, rather than an independent contractor relationship.

3.      *The Worker's Opportunity for Profit or Loss*

The workers were paid an established hourly rate by Dr. Kresock and were paid time and a half for work done in excess of their daily eight hours. Workers were paid via cashier's checks, signed by Dr. Kresock, following a submission for approval of biweekly timesheets to "manager" Ms. Smith. There is no indication that there were any additional opportunities to seek profit or loss from petitioner's practice. Ms. Smith was not compensated via cashier's checks, but petitioner did routinely pay Ms. Smith's personal bills during the tax periods at issue. The parties stipulated that between 2010 and 2015, petitioner made multiple interest payments per year to various banks on behalf of loans owed by Ms. Smith. The amounts of these interest payments varied from $617 to $35,028. This factor is in favor of an employment relationship.

4.      *Whether the Principal Can Discharge the Worker*

Ms. Smith testified that the workers were free to quit at any time, and there was no real process of termination. It is not clear whether

[*9] there was a specific termination process to remove an employee should Dr. Kresock desire to do so. Thus, this factor is neutral in the determination as to whether an employment relationship existed.

5. *Whether the Work Is Part of the Principal's Regular Business*

The work performed by the workers was part of petitioner's regular business as a medical office. The workers performed "front office" and "back office" functions. At Ms. Smith's direction, the workers performed mundane duties such as answering phones, scheduling patient appointments, completing prior authorizations, faxing prescriptions, collecting payments, checking the blood pressure, weight, and pulse of patients, and directing patients to patient rooms. Ms. Smith managed the office and was also responsible for medical coding. This factor weighs in favor of an employment relationship.

6. *The Permanency of the Relationship*

In *Ewens & Miller, Inc.*, 117 T.C. at 273, the Court found that a transitory relationship pointed toward independent contractor status. The workers all stayed with petitioner for several years. Ms. Banuelos performed services for petitioner from the end of 2010 through the end of 2015. Ms. Blevins performed services for petitioner from the end of 2010 through February 2015. Ms. Morales performed services from July 2014 through the end of 2015. Ms. Moreno performed services from January 2011 through March 2013. During these periods, these workers often submitted timesheets with at least 70 hours, indicating full-time work weeks. Dr. Kresock testified that Ms. Smith worked with him the "entire time" petitioner operated, and Ms. Smith testified that she worked "almost every day." This indicates that the relationship between the workers and petitioner was not transitory. This factor weighs in favor of an employment relationship.

7. *The Relationship the Parties Believed They Were Creating*

Three workers were previously students that fulfilled part of their practical training at petitioner's practice. During the period when they performed their training, the workers expressed an interest in working for petitioner following their practical training. Ms. Smith testified that she was merely volunteering her time to petitioner. This does not

**[\*10]** necessarily indicate the parties believed they were creating an employment relationship. This fact is neutral.

### 8. *Conclusion*

After consideration of the record and the relevant factors, the relationship between petitioner and Ms. Smith and petitioner and the workers is best characterized as an employment relationship. The critical factor of whether petitioner exercised control over the workers is met. Additional factors such as the investment in the work facilities used by the workers, the workers' opportunities for profit or loss, whether the work was part of petitioner's regular business, and the permanency of the relationship all lean significantly in favor of the finding that this was an employment relationship.

### C. *Section 530 Relief*

Section 530, when applicable, affords a taxpayer relief from federal employment taxes even if the relationship between the principal and the worker would otherwise require the payment of those taxes. RA 1978 § 530(a)(1), 92 Stat. at 2885; *Charlotte's Office Boutique*, 121 T.C. at 106.

To qualify for section 530 relief, a taxpayer (1) must not have treated the worker as an employee for any period for purposes of federal employment taxes (historic treatment requirement); (2) must have consistently filed all federal tax returns (including information returns) required to be filed by the taxpayer with respect to the individual for periods after 1978 on a basis consistent with the taxpayer's treatment of that individual as not being an employee (reporting consistency requirement); (3) must have had a reasonable basis for not treating the worker as an employee, e.g., the taxpayer's treatment of the worker was in "reasonable reliance" on one of the items specified in section 530(a)(2) (reasonable basis requirement); and (4) must not have treated as an employee any individual holding a position "substantially similar" to that of the worker in question (substantive consistency requirement). RA 1978 § 530(a)(1)–(3), 92 Stat. at 2885–86; *Charlotte's Office Boutique*, 121 T.C. at 106–07.

To begin, we focus our analysis on the third requirement; i.e., whether petitioner had a reasonable basis for not treating the workers as employees with respect to the disputed payments. Section 530(a)(2) provides a safe harbor for satisfying this requirement. RA 1978

**[\*11]** § 530(a)(2), 92 Stat. at 2885–86. Under the safe harbor, petitioner will have had a reasonable basis for not treating the workers as employees as to the disputed payments if the record establishes that, in treating them as such, petitioner reasonably relied on the existence of any of the following circumstances:

> (A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

> (B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

> (C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

*Id.*

We find petitioner has failed to establish its qualification for the reasonable basis requirement under the third requirement of section 530, nor has petitioner satisfied the second requirement of section 530 as it is undisputed petitioner failed to file Forms 1099–MISC for the tax periods at issue. *See* RA 1978 § 530(a)(1)(B), (2), 92 Stat. at 2885–86. Under a literal reading of that text, all requirements must be met in order for petitioner to receive the relief described therein. Accordingly, petitioner is not entitled to section 530 relief and is therefore liable for the federal employment taxes reflected in the notice of determination.

### D. *Additions to Tax*

Section 6651(a)(1) and (2) imposes additions to tax for failure to file a return and failure to pay the amount shown as tax on a return, respectively, on or before the date prescribed unless the taxpayer proves that such failures are due to reasonable cause and not due to willful neglect. *See* Treas. Reg. § 301.6651-1(c). Willful neglect is defined as a "conscious, intentional failure or reckless indifference." *United States v. Boyle*, 469 U.S. 241, 245 (1985). Reasonable cause for a failure to file exists where the taxpayer exercised ordinary care and prudence but was nevertheless unable to file the return by the due date. *Id.* at 246. Reasonable cause for a failure to pay exists where the taxpayer exercised

[*12] ordinary business care and prudence in providing for payment but was nevertheless either unable to pay the tax or would have suffered undue hardship if the tax has been paid. *See* Treas. Reg. § 301.6651-1(c)(1).

1. *Section 6651(a)(1) Failure to Timely File Additions to Tax*

Respondent determined that petitioner is liable for additions to tax under section 6651(a)(1) for the tax periods at issue. The parties stipulated that petitioner did not file employment tax returns for the tax periods at issue. Petitioner must demonstrate reasonable cause for failing to file employment returns; however, petitioner has provided no evidence that its failure to file was in any way due to reasonable cause and not due to willful neglect. Accordingly, we sustain the section 6651(a)(1) additions to tax respondent determined.

2. *Section 6651(a)(2) Failure to Timely Pay Additions to Tax*

Respondent determined that petitioner is liable for additions to tax under section 6651(a)(2) for the tax periods at issue. Since petitioner never filed employment tax returns for the tax periods at issue, respondent prepared substitutes for returns (SFRs) pursuant to section 6020(b) and sent them to petitioner on March 31, 2021. The SFRs are treated as tax returns filed by petitioner. *See* I.R.C. § 6651(g)(2). The SFRs for each tax period show tax due, and yet petitioner has made no payments.

We find petitioner has failed to provide evidence that its failure to pay was in any way due to reasonable cause and not due to willful neglect. We accordingly sustain the section 6651(a)(2) additions to tax respondent determined.

In consideration of the foregoing, decision for respondent is appropriate. We have considered all of the arguments that the parties made, and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*